IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

EDWARD BURNETT, JR.,

                                   Plaintiff,

vs.                                              Civil Action No.
                                                 6:02-CV-0677 (LEK/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security,

                                   Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

GREATER UPSTATE LAW PROJECT    LOUISE M. TARANTINO, ESQ.
119 Washington Avenue
Albany, NY 12210

NORTH COUNTRY LEGAL SERVS.      PETER RACETTE, ESQ.
100 Court Street
P.O. Box 989
Plattsburgh, NY 12901

FOR DEFENDANT:

HON. GLENN T. SUDDABY           WILLIAM H. PEASE, ESQ.
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL
Social Security Administration
26 Federal Plaza
New York, NY 10278

BARBARA L. SPIVAK, ESQ.
Chief Counsel, Region II

KAREN ORTIZ, ESQ.
Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

Plaintiff Edward Burnett, Jr., who is now receiving supplemental

security income ("SSI") benefits as a result of a later application, has

commenced this action seeking judicial review of an administrative

determination denying his initial request for SSI payments.  Burnett, a

recovering alcoholic who suffers principally from significant mental

impairments, although reportedly also experiencing certain physical

conditions of lesser significance, asserts that the agency's determination

that he is not disabled lacks the support of substantial evidence in the

record, particularly in view of the unexplained rejection by the

administrative law judge ("ALJ") deciding the matter of an expert

consultant's opinion, to the effect that plaintiff's mental impairment met or

equaled a listed disability.  Plaintiff seeks reversal of the Commissioner's

determination and a remand of the matter to the agency, with a directed

finding of disability, for the limited purpose of making a calculation of

benefits.

Because I find the ALJ's determination that plaintiff was not disabled during the relevant period is not supported by substantial evidence and overlooks, without proper explanation, the finding of an expert consultant to the contrary, as well as substantial clinical evidence of the existence of a disabling condition, I recommend that plaintiff's motion for judgment on the pleadings be granted, and that the matter be remanded for further proceedings consistent with this report and recommendation.

I.    BACKGROUND

Plaintiff was born on May 19, 1949; at the time of the most recent administrative hearing in this matter, Burnett was fifty-two years of age. Administrative Transcript at pp. 41-42, 308-09.[1]  The plaintiff is married, and has a son who was twenty-one at the time of his hearing.  AT 309. Burnett, who is not working and receives public assistance, lives with his family in subsidized housing in Rousse's Point, New York.  AT 41-42, 46, 308-09.

Plaintiff has a high school diploma as well as an associate's degree in the field of marketing and business.  AT 43, 309.  Plaintiff is continuing

---

[1]      Portions of the administrative transcript (Dkt. No. 11), which was filed by the Commissioner with her answer, will be cited as "AT ___."

to pursue his education, and at the time of the first hearing had nearly completed his third year of course study toward a bachelor's degree.[2]  AT 43.

Although there is some discrepancy as to the relevant end date, plaintiff was not gainfully employed during any time relevant to his claim for SSI benefits.[3]  AT 313.  Burnett's past relevant work has included operating heavy construction equipment and self-employment in the fields of construction and land development.  AT 44, 311.  While the circumstances of Burnett leaving his past employment are somewhat vague, it appears from the record that an unfavorable business climate and difficulties with his business partners, who also served as his lawyers, significantly influenced that decision.  *See* AT 44-45.

The evidence in the record reflects that the plaintiff suffers from a host of mental and physical impairments.  In the past plaintiff has been diagnosed with, and has received treatment for, alcoholism – a condition which apparently led to his being arrested on several occasions.  AT 57.

_____

[2]      As will be seen, hearings in this matter were conducted on December 2, 1997 and November 6, 2001.  There was no discussion during the second hearing as to the status of plaintiff's efforts to secure a bachelor's degree.

[3]      During the first hearing, plaintiff testified that he worked until 1990.  AT 44.  At his second hearing, however, plaintiff affixed the date of his last work at 1984.  AT 312-13.

During the second hearing, however, plaintiff reported having been sober

for a period of nine years, and there is no evidence in the record to

contradict this assertion.  AT 324.  Plaintiff denies having resorted to the

use of any illicit drugs or controlled substances.  *Id.*

From a physical standpoint, plaintiff reports suffering from gout, non-

insulin dependent diabetes, and a back condition which has been

diagnosed as degenerative disc disease.  AT 41, 47, 310.  Both plaintiff's

gout and his diabetes appear to be well controlled by medication, and do

not seemingly present any significant work related restrictions.  AT 314,

316.  Plaintiff's back condition, however, appears to have been more

bothersome, requiring him to seek medical attention over the years.  AT

314.  Examination of the plaintiff's back on April 10, 1996 by Dr. Joseph

Kelly revealed largely unremarkable symptomology, although an x-ray

conducted within that time frame reflected moderate degenerative arthritic

changes in the L4 and L5 region.  AT 219-22.  Plaintiff's back pain, which

he described during the second hearing as continuous and interfering with

his ability to sleep and perform other functions, has been largely treated

through conservative means, including physical therapy and use of

ibuprofen.  AT 47-48, 314, 316.  While plaintiff has requested that he be

considered for surgery to address the condition, his doctors apparently have recommended against it.  AT 314.

Although Burnett plainly suffers from various physical conditions, including those recited above, they are greatly overshadowed by his history of mental impairments, which are the dominant factors in the disability equation.  For years plaintiff has experienced psychological difficulties, including in the area of anger management, and has been treated for those conditions by a variety of health care professionals, including psychiatrists and psychologists.  Plaintiff's mental condition has, in his view, been exacerbated by his mother's suffering from Alzheimer's disease and her ultimate death, as well as a suicide attempt by his son, who also suffers from psychological difficulties.  AT 57, 323, 327.

By his own accounts, plaintiff has difficulty interacting with others.  While Burnett did at one time have a friend, that friendship was lost when he refused a request to work for the friend, citing his back problems as a reason.  AT 322-23.  Plaintiff states that he has extreme disdain for various public officials, as well as for lawyers.  AT 45; *see also* 236, 245.  At one point, according to the plaintiff, his distasteful experiences with his former lawyer led him to contemplate and formulate a plan for killing that

-6-

lawyer.[4]  AT 45.

Plaintiff has sought and obtained treatment from a variety of health care providers for his mental condition.  Burnett underwent an initial evaluation by professionals at the University Health Center in Burlington, Vermont in May of 1991.  AT 175-80.  During that evaluation session plaintiff described having feelings of anxiety and depression, related to his financial difficulties and near bankruptcy.  AT 178.  During the course of his subsequent treatment at the University Health Center, plaintiff was seen at various intervals by Mark Pitcher, M.D., beginning in November, 1992.  *See* AT 171.  In May of 1994 Dr. Pitcher described plaintiff as suffering from anxiety disorder with panic attacks, and noted a history of depression.  AT 161.  In his notes of that session, Dr. Pitcher described the plaintiff as "vindictive, anxious, very angry against all lawyers, almost to the point of a pathologic fixation."  *Id.*  At that time Dr. Pitcher prescribed Trazodone and advised the plaintiff to seek supportive therapy and anger management intervention.  *Id.*  Plaintiff's treatment with Dr.

---

[4]      By his own account plaintiff's intent to carry out his plan progressed to a point where he went to such lengths on a bluff with a high powered rifle, with the intent to shoot the lawyer.  AT 45.  It was only because a tree branch obscured his view, according to the plaintiff, that he did not carry out his contemplated plan.  *Id.*

Pitcher extended over time into 1997, with continued notation of psychological difficulties and prescription of Trazodone.[5]  *See*, *e.g.*, AT 158, 264.

Plaintiff was evaluated in January of 1996, and later in April of that year, by professionals affiliated with Clinton County Mental Health and Alcohol Services; those professionals included David C. Hinsman, M.D., a staff psychiatrist, and Bobbi J. Terry, CSW, a psychiatric social worker. AT 228-38.  Burnett sought assistance from that clinic based upon his feelings of inability to control anger.  AT 233, 235.  In a report of his first evaluation, Dr. Hinsman diagnosed the plaintiff as suffering from alcohol dependence in full remission, and a personality disorder not otherwise specified ("NOS"), additionally noting the existence of several extreme stressors including a son described as "psychotic and delusional" and a personal history of impulse control difficulties.  AT 238.  Based on his evaluation, Dr. Hinsman measured plaintiff's global assessment of functioning ("GAF") score as 60.[6]  AT 233, 235.  In his report of that

---

[5]       In 1997 Lithium was added by Dr. Pitcher to plaintiff's prescribed medication regimen to address his mental disorders.  AT 264.

[6]       GAF is described as a "clinician's judgment of the individual's overall level of functioning."  Diagnostic and Statistical Mental Disorders 32 (4th ed., Text Revision 2000) ("DSM-IV-TR").  A GAF score of between 50 and 60 indicates the existence of moderate mental health symptoms or moderate difficulties in social,

session, Dr. Hinsman also referred to plaintiff's acknowledged past homicide ideation with intent.  AT 236.

In a second psychiatric assessment, prepared on April 29, 1996, Dr. Hinsman diagnosed Burnett as suffering from post traumatic stress disorder, obsessive compulsive disorder, alcohol dependence in remission, and a personality disorder, also noting the presence of stressors and a need to rule out a mood disorder.  AT 231.  In that report, Dr. Hinsman also noted that plaintiff's verbalizations appeared to exhibit paranoid and suspicious qualities, but that the plaintiff was not a danger to himself or others.  *Id.*

Plaintiff was examined on April 10, 1996 by Dr. John Seltenreich, Ph.D., a consultative examiner retained by the agency.  AT 223-25.  As a result of his examination, Dr. Seltenreich diagnosed Burnett as suffering from a depressive disorder and anxiety disorder, and assessed his GAF at 55.  AT 224-25.  Dr. Seltenreich also opined that Burnett "does not appear to be incapacitated from being self-sufficient by any psychiatric condition." AT 225.

During that same time frame a non-examining consultant, Dr. James

_____

occupational or school functioning.  *Id.* at 34.

Alpert, prepared a written report, utilizing a standard agency format, reflecting plaintiff's residual functional capacity ("RFC") from an exertional point of view.  AT 133-40.  In it, Dr. Alpert concluded that plaintiff is capable of lifting fifty pounds occasionally and twenty-five pounds frequently, can stand and/or walk for six hours in an eight hour workday, and is able to sit for six hours in an eight hour workday.  AT 134.  Dr. Alpert contemporaneously completed a second form, in which he addressed plaintiff's mental RFC, concluding that plaintiff's psychological condition resulted in a moderate limitation on his ability to accept instructions and respond appropriately to criticisms from supervisors, as well as a moderate limitation of his ability to set realistic goals or make plans independently.  AT 141-42.  With these two exceptions, Dr. Alpert's mental RFC reflected no discerned significant limitations in the stated areas of concern.  *Id.*  The closing portion of that assessment reflects Dr. Alpert's opinion that Burnett suffers from a personality disorder as well as alcohol dependency in sustained remission, but can maintain adequate attention and concentration for work purposes, can relate acceptably with others, and is capable of sustaining work activities at a consistent pace. AT 143.  Those conclusions were later ratified by another agency

consultant, Ann Herrick, Ph.D., on September 5, 1996.[7]  AT 143.

On April 10, 1998, plaintiff underwent another comprehensive

mental health evaluation by Clinton County Mental Health and Alcohol

Services.  AT 465-66.  In that assessment, which was endorsed by Dr.

Hinsman, Burnett was found to have an antisocial attitude with an anger

toward persons of various degrees of authority, and confessed to planning

to kill his lawyer at one time.  AT 465-66.  As a result of those findings,

plaintiff was referred to staff clinical psychologist Dr. Norman Bachand for

an interview on April 20, 1998.  AT 463-64.  Based upon his observations,

Dr. Bachand diagnosed the plaintiff as suffering from obsessive

compulsive disorder, and noted that bipolar disorder should be ruled out.

*Id.*  That diagnosis was later confirmed by Dr. Hinsman, based upon a one

hour psychiatric assessment conducted on April 24, 1998.[8]  AT 460-62.

Plaintiff was examined by a psychiatrist, Dr. John Schenkel, at the

Clinton County Mental Health and Alcohol Services facility on January 13,

1999.  AT 456-58.  Dr. Schenkel noted Burnett's admission of suicidal and

---

[7]     Dr. Alpert also completed a form on April 24, 1996 indicating that plaintiff suffers from a personality disorder which causes moderate limitation in maintaining social functioning.  AT 145-53.

[8]     In his written notes of that session, Dr. Hinsman also suggested that the possibility of Attention Deficit/Hyperactivity Disorder ("ADHD") be examined.  AT 461.

homicidal thoughts, though without intent to act upon any of those thoughts.  AT 457.  Dr. Schenkel diagnosed the plaintiff as suffering from bipolar disorder, with current depression; obsessive compulsive disorder; alcohol dependence, in full and sustained remission; and paranoid personality disorder, and assessed a GAF score of "approximately 40."[9] AT 457.  Based upon his findings, Dr. Schenkel increased plaintiff's Lithium dosage, and prescribed Wellbutrin to address his feelings of depression.  AT 458.

On March 8, 2000 Dr. Norman Bachand, another staff clinical psychologist with Clinton Mental Health and Alcohol Services, submitted a report regarding the plaintiff.  AT 449-55.  In his report, Dr. Bachand noted his involvement with plaintiff's case since April of 1998 and his review of available records of Burnett's evaluation and treatment, dating back to 1991.  *Id.*  Dr. Bachand reiterated his early diagnosis of obsessive compulsive disorder, and noted his conclusion that Burnett suffers from various psychiatric problems which significantly interfere with his memory and concentration, ability to maintain sustained effort at any task, social interaction, and ability to adapt to various work settings.  AT 450-51.  In an

---

[9]     A GAF score of 40 signifies major impairment in several areas, such as work or school, family relations, judgment, thinking or mood.  DSM-IV-TR at 34.

accompanying RFC report, Dr. Bachand noted marked limitations in plaintiff's ability to carry out detailed instructions, to maintain and sustain attention and concentration, to conform to a schedule, to adapt to changes in a work setting, and to get realistic goals.  AT 454-55.  Dr. Bachard also noted a marked limitation in Burnett's ability to accept instructions and respond appropriately to criticism, adding the comment that in this area the plaintiff was "off the chart."  AT 455.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before The Agency

Plaintiff filed an application for SSI benefits under Title XVI of the Social Security Act, as amended, on or about December 20, 1995.  AT 71, 98-110, 111.  That application was denied, both initially and on reconsideration.  AT 59-62, 65-68.

At plaintiff's request a hearing was conducted on December 2, 1997 before ALJ Hastings Morse in connection with the denial of plaintiff's application for benefits.[10]  Following that hearing, at which plaintiff was represented by counsel, ALJ Morse rendered a decision dated January

---

[10]    That hearing was initiated on October 2, 1997, AT 27-37, but was adjourned in order to afford plaintiff an opportunity to explore the possibility of securing legal representation.  *See* AT 38-56.

15, 1998 finding that the plaintiff was not disabled during the relevant time period.  AT 11-26.  ALJ Morse based his decision upon his finding that plaintiff retained the RFC to engage in simple, entry level, low stress, light work which did not require contact with the public.  AT 19.  Applying this RFC finding and other relevant criteria to the medical-vocational guidelines set forth in the applicable regulations (the "grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ concluded that the plaintiff was not disabled.  AT 18-20.

Following an unsuccessful effort to obtain review of ALJ's Morse's decision by the Social Security Administration Appeals Council, *see* AT 4-7, plaintiff commenced an action in this court on March 3, 2000 challenging the agency's determination.  *Burnett v. Commissioner*, No. 00-CV-380 (N.D.N.Y., filed 2000).  Before the court could address the merits of Burnett's request for review of the adverse determination, however, the parties stipulated to a remand of the case to the agency for further consideration, pursuant to sentence four of section 205(g) of the Act, 42 U.S.C. § 405(g).  *See* AT 390-91.

The stipulated remand ultimately led to a second hearing, commencing on November 6, 2001, before ALJ Thomas P. Zolezzi.  AT

305-51.  Following that hearing, ALJ Zolezzi rendered a decision dated February 22, 2002 once again sustaining the denial of plaintiff's request for SSI benefits.  AT 295-303.  In his decision, ALJ Zolezzi applied the prevailing test for determining the issue of disability, finding first that plaintiff had not engaged in substantial gainful activity during the relevant time period between December 20, 1995 and January 12, 1999.  AT 302.  ALJ Zolezzi proceeded to next find the existence of provable physical and mental conditions of sufficient severity to restrict Burnett's ability to perform basic work activities, but concluded that those impairments did not meet or equal any of the listings set forth in the applicable regulations.  AT 298, 302.

Proceeding to step four of the familiar, five part test, ALJ's Zolezzi concluded that plaintiff retained the RFC to perform low stress light work on a sustained basis.  AT 298.  Applying that RFC, the ALJ concluded that the plaintiff did not retain the capacity to perform his past relevant work, which was described as highly stressful.  *Id.*  Proceeding to step five, and in reliance upon the testimony of Anthony Salerno, a vocational expert, the ALJ found the existence of jobs of sufficient numbers in the regional and national economies, including as an electronic mechanical assembler,

an electronic component handler, an etched-circuit processor, a bench worker and a dishwasher which, notwithstanding his exertional and non-exertional limitations, Burnett could perform.  AT 300-01.  In arriving at that conclusion ALJ Zolezzi rejected plaintiff's subjective testimony regarding his inability to interact with others, as well as his complaints regarding disabling back pain.  AT 299-301.  Based upon these findings ALJ Zolezzi concluded that the plaintiff is not disabled.[11]  AT 302-03.  That decision became a final determination of the agency as a result of the failure on the part of the Social Security Administration Appeals Council to review the decision within sixty days of its issuance.

On January 13, 1999, plaintiff filed a second claim for SSI benefits, which resulted in a finding of disability and corresponding award of benefits as of that date.  AT 296, 302.

B.   This Action

Plaintiff commenced this action on May 20, 2002.  Dkt. No. 1.  Issue was thereafter joined by the Commissioner's filing on December 6, 2002 of an answer, accompanied by an administrative transcript of the

---

[11]     As an alternative basis for finding that the Commissioner had carried her burden at step five of the analysis, ALJ Zolezzi found that plaintiff's RFC, when applied together with other relevant factors to the grids, yielded a finding of no disability.  AT 302.

proceedings before the agency.  Dkt. Nos. 10, 11.  With the filing on April

7, 2003 of plaintiff's brief, Dkt. No. 15, and that on behalf of the

Commissioner on September 4, 2003, Dkt. No. 19, the matter is now ripe

for determination, and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).[12]  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

        A.      Scope of Review

_____A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.

Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*,

_____

[12]      This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28,
1998, and amended and reissued by Chief District Judge Frederick J. Scullin, Jr.
on September 19, 2001.  Under that General Order an action such as this is considered
procedurally, once issue has been joined, as if cross-motions for judgment on the
pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To

-18-

determine on appeal whether an ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record,

examining the evidence from both sides, because an analysis of the

substantiality of the evidence must also include that which detracts from

its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v.

NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards

have been applied, and/or that substantial evidence does not support the

agency's determination, the agency's decision should be reversed.  42

U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the

court may remand the matter to the Commissioner under sentence four of

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to

develop a full and fair record or to explain his or her reasoning.  *Martone*,

70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.

1980)).  A remand pursuant to sentence six of section 405(g) is warranted

if new, non-cumulative evidence proffered to the district court should be

considered at the agency level.  *See Lisa v. Secretary of Dep't of Health &

Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without

remand, while unusual, is appropriate when there is "persuasive proof of

disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

    B.    <u>Disability Determination - The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months [.] " 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

     If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final

matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

     C.    The Evidence In This Case

       1.    Plaintiff's Challenge Of The ALJ's RFC Findings

In his appeal, plaintiff does not urge his physical impairments including, notably, his back condition, as a basis for rejecting the ALJ's determination.  *See* Plaintiff's Brief (Dkt. No. 15) at 19.  Indeed, Burnett accepts the ALJ's finding that he is physically capable of fulfilling the exertional requirements associated with the light work category.  *Id.* Plaintiff does, however, find fault with those portions of the ALJ's RFC findings in which he concludes that Burnett is capable, given his non-

exertional limitations, of such activities as working with others, accepting direction and responding appropriately to supervisors, and getting along with co-workers and peers.  *Id.* at 20.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC finding is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a.  Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.  20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F.Supp.2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An

administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

The finding that plaintiff retains the RFC to perform in a low stress environment must be evaluated against the backdrop of SSR 85-15 which provides that:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. A person may become panicked and develop palpitations, shortness of breath, or feel faint while riding in an elevator; another may experience terror and begin to hallucinate when approached by a stranger asking a question. Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.
>
> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. for example, a busboy need only clear dishes from tables. But an  individual with a severe mental disorder may find unmanageable the demands of making sure that he removes all the dishes, does not drop them, and gets

the table cleared promptly for the waiter or waitress. Similarly, an individual who cannot tolerate being supervised may not be able to work even in the absence of close supervision; the knowledge that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerable for some mentally impaired persons. Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.

SSR 85-15, 1985 WL 56857, at *6 (S.S.A. 1985).

The non-exertional component of the ALJ's RFC finding is directly contrary to many of the critical record entries. Reports from Dr. Pitcher, for example, reflect that Burnett exhibits chronically manic and accelerated behavior, AT 158, 161, 264; suffers from severe mood swings, AT 178; and experiences anger which, at times, makes his voice sound almost frightening, AT 161. Similarly, Dr. Hinsman has described Burnett as having feelings of suspicion and paranoia. AT 231. These findings, which are strongly suggestive of plaintiff's inability to work with others, are reinforced by the fact that when completing benefits application forms at the Social Security Administration Burnett became hostile and abusive, requiring that he be escorted from the agency office. AT 121.

The view that plaintiff is lacking in the ability to work in an

environment with others was reinforced by Dr. Alpert, a non-examining consultant who, in 1996, after reviewing plaintiff's medical records, found that he would have difficulty in accepting instruction or criticism from supervisors, and that he has a moderate limitation in the area of social functioning.  AT 142, 152.  Dr. Seltenreich, an examining consultant, has also implicitly supported this conclusion by scoring the plaintiff as having a GAF of 55, indicating moderate difficulty in social functioning.  AT 225.

As can be seen, those medical reports as well as the written opinions of Dr. Bachand reflect marked limitations in plaintiff's ability to carry out detailed instructions, perform activities within a schedule, sustain ordinary routine without special supervision, complete a normal work day and work week without interruptions, interact appropriately with the general public, accept instructions, respond appropriately to criticism from supervisors, get along with co-workers and peers, respond appropriately to changes in the work setting, and set realistic goals.  AT 454-55.

A letter dated March 8, 2000 from Dr. Bachand, a clinical psychologist directly involved in the plaintiff's treatment since April of 1998, is particularly persuasive on the issue of disability.[13]  In that

---

[13]      It is true that Dr. Bachand's March 8, 2000 assessment was conducted well after the close of the relevant period, which ended on January 12, 1999.  The

communication Dr. Bachand, who states that "[p]hilosophically, [he is] not much of a believer in disability and generally believe[s] that most people should find some sort of employment or vocation", concludes that based upon his "multitude of psychiatric problems" which interfere with his memory or concentration, his ability to maintain sustained work effort at any task, his social interaction and his ability to adapt to various work settings, Burnett is "essentially unemployable."  AT 451.  Dr. Bachand therefore strongly advocated to the Clinton County Department of Social Services that the plaintiff be considered for SSI benefits, characterizing "his problems as permanently disabling with little chance of any significant change."  *Id.*

In light of these persuasive record entries, which directly contradict the ALJ'S RFC finding upon which the ultimate determination of no disability hinges, I find that the ALJ's determination is not supported by substantial evidence.

_____

reports of Dr. Bachand, whose direct involvement with Burnett dates back to 1998, reflect no significant deterioration in his medical condition, and are thus properly considered as material to plaintiff's condition during the relevant time period.  *See Reyes v. Barnhart*, No. 01 Civ. 1724, 2002 WL 31385825, at *8 (S.D.N.Y. Oct. 21, 2002) ("subsequent medical evidence that supports the disabling nature of the medical conditions in the relevant time period can be material") (citing *Lane v. Apfel*, No. 98 Civ.2068, 2000 WL 1118921, at *9 (S.D.N.Y. Aug.8, 2000)).

2.    <u>Listing 12.08</u>

_____Although I find critical areas of disagreement with the ALJ's RFC

findings and ultimate conclusion, based upon those findings, there is yet

another, more convincing reason for setting aside the finding of no

disability.  In anticipation of rendering a decision following the second

hearing, ALJ Zolezzi elicited the expert opinion of Dr. Aaron Satloff, M.D.,

a psychiatrist located in Pittsford, New York.  AT 468-69.  In response to

the interrogatories posed to him by the ALJ, Dr. Satloff opined that plaintiff

suffers from a personality disorder NOS, and specifically concluded that

that condition met or equaled the impairment described in section 12.08 of

the relevant listings.  AT 474-75.  Dr. Satloff went on to find, however, that

notwithstanding the existence of a listed disorder the plaintiff should be

given another opportunity to obtain vocational training, with an eye toward

allowing him to perform in a simple, non-stressful position.[14]  AT 476.

Although Dr. Satloff's qualifying language raises some potential

confusion, his finding that plaintiff's condition meets or equals listing 12.08

is clear and unequivocal and, if accepted, warrants a finding of disability at

step three of the relevant test without the requirement of going forward to

---

[14]    Dr. Satloff also expressed his disagreement with Dr. Bachand's opinion that plaintiff is, and has been since 1991, disabled.  AT 477.

examine either plaintiff's ability to perform his past relevant work or the

existence of other jobs capable of being performed by the plaintiff.

*Martone*, 70 F. Supp.2d at 149 (citing *Ferraris*, 728 F.2d at 584); 20

C.F.R. §§ 404.1520(d), 416.920(d).  Yet, notwithstanding this unequivocal

response dictating a finding of no disability, ALJ Zolezzi went on to apply

the five step test and conclude the existence of no disability, without either

referring to or explaining his reasoning for rejecting the opinion of Dr.

Satloff regarding the listed disability.

In sum, the ALJ's unexplained rejection of a finding by a

professional consulted by him to assist in evaluating plaintiff's condition

that Burnett suffers from a listed disability, as well as the conclusion that

in any event the RFC's finding upon which the finding of no disability is

premised cannot withstand review under even the relatively modest

substantial evidence standard, warrants a reversal of the Commissioner's

determination, and a remand of the matter to the agency.

D.    Whether To Remand With Or Without A Directed Finding Of
      Disability

In light of Dr. Satloff's conclusion that plaintiff's condition at the

relevant times met and equaled listing 12.08, a finding of disability should

have been directed without the requirement of examining plaintiff's past

relevant work or eliciting vocational testimony to address whether or not

he is capable of performing work in the national economy.  Accordingly,

and particularly in view of the protracted proceedings which have already

occurred in this action and the significant delay experienced since

plaintiff's initial application for benefits, and the extent to which the plaintiff

has already gone to pursue this claim, I find that it would be unjust and

unwarranted to remand the case for further consideration.  *See Curry v.*

*Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) (ordering remand for sole purpose

of calculation of benefits when Commissioner had failed to meet burden at

step five and when remand could have resulted in further substantial delay

to resolution of application that had been pending for six years).  I

therefore recommend that the action be remanded to the agency, with a

directed finding of disability, for the limited purpose of calculating benefits

owing to the plaintiff.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

The ALJ's finding of no disability, which was premised upon an RFC

determination which minimizes the extent of plaintiff's non-exertional

limitations flowing from his mental impairment, overlooks highly

persuasive evidence that those limitations substantially restrict his ability

-30-

to perform light work even in a non-stressful environment.  The finding of

no disability, moreover, flies squarely in the face of an opinion, solicited by

the ALJ from an independent expert psychiatrist, to the effect that

plaintiff's condition both meets and equals that specified in section 12.08

of the listing of impairments.  Under these circumstances, the ALJ's

finding that the plaintiff is not disabled lacks the support of substantial

evidence, and cannot be sustained on review.

In light of the overwhelming evidence of plaintiff's disability and the

amount of time that has passed since the initial filing of his application for

benefits, moreover, I recommend that the Commissioner's determination

be reversed and the matter remanded to the agency, with a directed

finding of disability, for the sole purpose of calculation of benefits.

Based upon the foregoing it is hereby

RECOMMENDED that plaintiff's motion for judgment on the

pleadings be GRANTED, the Commissioner's determination denying

plaintiff's application for SSI benefits VACATED, and the case

REMANDED to the Commissioner with a directed finding of disability for

the sole purpose of calculating benefits owing to the plaintiff.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within ten (10) days.  FAILURE TO SO

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*,

984 F.2d 85 (2d Cir. 1993).

　　　IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy

of this Report and Recommendation upon the parties by regular mail.


Dated:　　April 27, 2005
　　　　　Syracuse, NY

David E. Peebles
U.S. Magistrate Judge